UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA D. MILLER,

    Plaintiff,                             Civil Action No. 12-10911

v.                                       HON.  DAVID M. LAWSON
                                         U.S. District Judge
COMMISSIONER OF SOCIAL         HON. R.  STEVEN WHALEN
SECURITY,                                 U.S. Magistrate Judge

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Rita K. Miller brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #20] be GRANTED and Plaintiff's Motion for Summary Judgment [Doc. #15] be DENIED.

## PROCEDURAL HISTORY

On May 10, 2010, Plaintiff filed an application for DIB, alleges disability as of December 31, 2005 (Tr. 111).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on May 17, 2011 in Mount Pleasant, Michigan (Tr. 29).  Administrative Law Judge ("ALJ") Jessica Inouye presided (Tr. 29).  Plaintiff, represented

by Lewis Seward, testified (Tr. 34-59), as did Plaintiff's husband David Miller (Tr. 60-63), and Vocational Expert ("VE") Michelle Ross (Tr. 64-69).

On May 31, 2011, ALJ Inouye found that Plaintiff was not disabled through her date last eligible (date last insured) for DIB of September 30, 2008 (Tr. 24). On November 8, 2011, the Appeals Council initially denied review of the case (Tr. 5-7), but later set aside the denial to consider evidence submitted subsequent to the administrative decision (Tr. 1-3). On February 3, 2012, the Appeals Council denied Plaintiff's request for review of the new material on the basis that the June, 2011 treating records were not relevant to the question of whether Plaintiff was disabled on or before September 30, 2008 (Tr. 1-2). Plaintiff filed suit in this Court on February 29, 2012.

## BACKGROUND FACTS

Plaintiff, born September 10, 1956, was 52 on September 30, 2008 (Tr. 24, 111). She completed high school and worked previously as cashier, laborer, and store attendant (Tr. 163-164). Her application for DIB alleges disability as a result of arthritis, bladder problems, nerves, sleep apnea, and low potassium (Tr. 162).

### A. Plaintiff's Testimony

*Prior to Plaintiff's testimony, her attorney amended the alleged onset of disability date to July 1, 2008* (Tr. 31).

Plaintiff stated that she lived in a single-family home with her husband and three dogs (Tr. 35). She testified that she had not worked between July 1, 2008 and September 30, 2008 (Tr. 35). She indicated that she made one unsuccessful work attempt in May, 2009 (Tr. 36).

She stated that she last worked in 2005 as a grocery store cashier concurrently with a job at a gas station (Tr. 36-37). Plaintiff stated that the grocery store position, which involved scanning items, completing transactions, and bagging groceries, lasted only three or four months (Tr. 37). She reported that the gas station job required her to make coffee and wipe counters (Tr. 37). She stated that she quit both jobs after meeting her current husband and deciding to move (Tr. 37). Plaintiff stated that between 2000 and 2002, she owned her own daycare business, noting that the job required her to change diapers, complete paperwork, and collect fees from the parents (Tr. 38). She stated that she lost the business when she divorced her former husband (Tr. 39). She reported that she held jobs while raising her now-adult children (Tr. 40).

Plaintiff alleged reading comprehension problems, but acknowledged that she could "read and understand" most of a medical history form (Tr. 41). She stated that she was "slow" at math, but denied drawer shortages while working as a cashier (Tr. 42). Plaintiff stated that she drove "very little" in 2008 due to back and leg problems (Tr. 42). She indicated that between July 1, and September 30, 2008, she was prescribed pain medication by Dr. Holmes (Tr. 44). She stated that Dr. Holmes did not refer her to a specialist (Tr. 44). She reported that during the relevant period, she experienced continuous lower back pain shooting into the lower extremities (Tr. 45). She stated, in effect, that cervical disc problems caused range of motion limitations and headaches (Tr. 46). She testified that she stood 5' 6" and weighed 210 pounds (Tr. 42-43). She reported that she had medical insurance in 2008 but that her only source of income was part of her former husband's retirement (Tr. 43-44).

Plaintiff testified that she experienced sleep apnea, restless leg syndrome, bladder problems, and high blood pressure (Tr. 46). She reported that symptoms of sleep apnea resolved with the use of a CPAP device (Tr. 47). She stated that bladder control problems required her to take frequent bathroom breaks (Tr. 47). She alleged that blood pressure medicine made her sleepy (Tr. 47). Plaintiff added that in 2008, she was taking medicine for depression brought on by physical limitations (Tr. 48-49). She stated that she was also taking medicine for anxiety (Tr. 49). She stated that in 2009, Dr. Yacisen[1] restricted her from lifting more than eight pounds (Tr. 50). She denied receiving formal counseling for depression in 2008 (Tr. 50).

Plaintiff stated that back and leg problems dating back to 2008 prevented her from standing long enough to prepare a meal, adding that she could stand for only 15 minutes before requiring a position change (Tr. 50-51). She stated that she was unable to lift laundry baskets (Tr. 51). She admitted that in 2008, she was able to walk, albeit at a slow pace, for up to 45 minutes before needing to stop (Tr. 52). She stated that in 2008, she was unable to lift more than 10 pounds (Tr. 54). She indicated that she did not experience significant gripping problems in 2008 (Tr. 54). She stated that she required help getting dressed and reported that she would "get dizzy" while showering (Tr. 55). She stated that in 2008, she was unable to pick up her grandchildren due to back problems (Tr. 56). She also alleged hip pain (Tr. 57). Plaintiff reported that she coped with back pain by using a padded rocking

---

[1]Mis-transcribed as "Dr. Yackerson" (*see* Tr. 258-303).

chair, adding that she sat in rocking chair up to four times a day (Tr. 59). She stated that in 2008, she experienced debilitating depression approximately two weeks of every month (Tr. 58).

### B. Testimony by Plaintiff's Husband

David Miller testified that as of 2008, he did most of the shopping and cooking, due to Plaintiff's inability to walk for long distances (Tr. 61). He stated that Plaintiff experienced difficulty pushing a vacuum (Tr. 61). He indicated that Plaintiff was able to fold laundry but was unable to lift laundry baskets (Tr. 62). He estimated that in 2008, Plaintiff was capable of walking "close to a mile" or perhaps only "a half mile" (Tr. 62).

### C. Medical Evidence[2]

February, 2006 treating records by Naheed Rizvi, M.D. state that Plaintiff experienced stress as a result of a dispute with her brother (Tr. 219). A July, 2007 stress test yielded normal results (Tr. 237, 392). August, 2007 imaging studies of the cervical spine showed "only minimal foraminal encroachment at C5-6" but no "acute process" (Tr. 228, 396). In February, 2008, treating notes by Jeffrey C. Holmes, M.D. indicate that Plaintiff's back pain was improving (Tr. 389). She stated that she exercised once a week when the weather was good (Tr. 389). Plaintiff, currently 227 pounds, had a BMI of 36.72 (Tr. 389). In April, 2008, Plaintiff denied joint, muscle, or back pain (Tr. 385). The following month, Plaintiff

---

[2] Medical records not relevant to Plaintiff's condition between July 1, 2008 and September 30, 2008 have been reviewed in full, but are omitted from the present discussion.

sought treatment for an infection but appeared in no acute distress (Tr. 379). Plaintiff reported mid back pain without radiation into the legs (Tr. 375). Plaintiff stated that she walked two miles each day (Tr. 375). Her BMI was registered at 32.84 (Tr. 375). A July, 2008 imaging study showed osteoarthritic changes at L3-L4 and L4-L5 but no spondylolysis (Tr. 374).

The same month, Dr. Holmes remarked that Plaintiff exhibited depression because of marital problems and her inability to find a job (Tr. 371). Plaintiff reported that she was currently taking care of her father-in-law (Tr. 371). Dr. Holmes stated that Plaintiff exhibited a normal memory and appropriate concentrational abilities (Tr. 371). The following month, Plaintiff reported that Lexapro, prescribed three weeks earlier for depressive symptoms, had not improved her mood (Tr. 369). On September 9, 2008, she stated that she experienced pain between her shoulder blades when vacuuming (Tr. 367). On September 17, 2009, Plaintiff again denied body pain (Tr. 362). She stated that she exercised when the weather was good (Tr. 363). Plaintiff was diagnosed with sleep apnea on September 22, 2008 (Tr. 365). Elie M. Obeid, M.D., advised Plaintiff to exercise and lose weight, noting the correlation between obesity and her sleep apnea (Tr. 365, 488). On September 24, 2008, she again denied body pain (Tr. 352). On October 15, 2008, Dr. Obeid found that Plaintiff's symptoms of sleep apnea were "well treated" with a CPAP device (Tr. 349). The same month, Dr. Holmes noted that symptoms of depression were improving with medication (Tr. 344). In November, 2008, Dr. Holmes stated that Plaintiff denied body pain (Tr. 342).

May, 2009 examination notes by Joseph R. Yacisen, D.O. state that Plaintiff injured

her right elbow in a January, 2009 accident (Tr. 273, 277, 513). In September, 2009, Plaintiff, reporting the death of her father-in-law, stated that she had been his primary care giver for the past three years (Tr. 317). November, 2009 treating notes by Dr. Yacisen state that right elbow ulnar nerve transposition performed one month earlier improved Plaintiff's condition (Tr. 266, 296). Dr. Yacisen noted that recent imaging studies showed the presence of severe degenerative joint disease of the left thumb (Tr. 266). Following November, 2009 right carpal tunnel release surgery, Plaintiff reported level "two" pain on a scale of one to ten (Tr. 264, 294). She was released to light duty limited to 15 pounds lifting (Tr. 264). In March, 2010, Plaintiff underwent surgery for urinary incontinence, performed without complications (Tr. 424-425). Plaintiff underwent left thumb hemiarthroplasty in April, 2010 (Tr. 292). Plaintiff reported the following month that she was "doing great" (Tr. 303).

Plaintiff reported back pain radiating into her legs in July, 2010 (Tr. 550, 567). Dr. Holmes approved a disability parking placard (Tr. 566). An August, 2010 CT scan of the lumbar spine showed stenosis, mild to moderate at L1-L2 and moderate at L2-L5 (Tr. 547). The same month, Plaintiff stated that she was unable to walk or stand for more than five minutes (Tr. 548). Imaging studies of the cervical and thoracic spine showed nerve root compromise (Tr. 578-579). In November, 2010, neurosurgeon Frank La Marca, M.D. opined that Plaintiff's back pain was myofascial, declining to recommend surgery (Tr. 606).

In April, 2011, Dr. Holmes completed a treating source statement pertaining to Plaintiff's condition between February, 2008 through September, 2009 (Tr. 702-703). Dr. Holmes stated that a July 1, 2008 x-ray showed evidence of arthritis (Tr. 702). He cited

August 20, 2008 records showing that Plaintiff experienced depression (Tr. 702). He also noted that on September 17, 2008, Plaintiff was diagnosed with sleep apnea (Tr. 702). He opined that due to spinal stenosis with arthritis, she "would not have been able to do any type of job on a full-time basis" between July 1 and September 30, 2008 (Tr. 703).

### D.  Vocational Expert Testimony

VE Michelle Ross classified Plaintiff's former work as a cashier as unskilled and exertionally light and work as a daycare provider as semiskilled/medium[3] (Tr. 65-66, 207). Assuming Plaintiff's age, education, and work background, the ALJ posed the following hypothetical question:

> The hypothetical individual would require work, which is simple and unskilled with an SVP of 1 or 2. This individual could perform light work. This individual would require a sit/stand option, while remaining at the work station. Option means the individual could sit or stand at will while performing the assigned duties. This individual could stand for up to 15 minutes at a time, walk up to 45 minutes at a time for a total of four hours in an eight-hour workday.
> ¶This individual could sit for 30 minutes at a time and with normal breaks for a total of six hours in an eight-hour workday. This individual can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restriction. However, with the left upper extremity, I would reduce it to occasional. This individual could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching. Again, with the left upper extremity, I would reduce

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

> the fine manipulation to occasional. And the left is the non-dominant hand. This individual should avoid unprotected heights, moving machinery and vibrations. Should be restricted to a relatively clean work environment, meaning, low levels of pollutants and stable temperatures.
> ¶This individual can perform postural activities occasionally of climbing ramps and stairs, balancing, stooping, crouching, kneeling and crawling. No climbing of ladders, ropes and scaffolds. This individual should not be required to perform more than simple reading skills as part of the job, could complete most basic forms, but should not be required to read paragraphs and digest it and be able to give a recitation of the information contained. This individual could perform basic math skills, such as addition and subtraction. This individual should not be required to constantly turn the head, and this individual should also have ready access to the bathroom facilities (Tr. 66-67).

The VE found that the hypothetical individual would be unable to perform any of her past relevant work, but could perform the unskilled, light work of a machine tender (7,800 positions in the State of Michigan); counter clerk (8,200); and line attendant (4,800) (Tr. 67). The VE also testified that given the above limitations, no transferrable skills existed from Plaintiff's former work to positions at the sedentary level (Tr. 67-68). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT"), except for testimony regarding the sit/stand option which was based on her own professional experience and information provided by the State of Michigan (Tr. 68).

In response to questioning by Plaintiff's attorney, the VE testified that if the above-limited hypothetical individual were further limited by only occasional handling and reaching in both arms and occasional turning of the head, and no vibratory tools, the counter clerk position would be eliminated (Tr. 68). The VE stated that if the above-limited individual were off task for 20 percent of the work day, all of the above-stated jobs would be eliminated (Tr. 69).

### E.     The ALJ's Decision

Citing the medical evidence of record, ALJ Inouye found that while Plaintiff experienced the severe impairments of sleep apnea, depression, restless leg syndrome, and degenerative disc disease, none of the conditions met or equaled an impairment listed in Appendix 1 Subpart P, Regulations No. 4. (Tr. 17).   The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC") for unskilled, exertionally light work with the following additional work limitations:

> [S]imple and unskilled, with an SVP of 1 or 2.  The claimant required a sit/stand option while remaining at her workstation (option means that hte claimant could sit or stand at will while performing her assigned duties).  She could stand for up to 15 minutes at a time and walk for up to 45 minutes at a time for a total of 4 hours in an 8-hour workday.  She could sit for 30 minutes at a time, with normal breaks, for a total of 6 hours in an 8-hour workday.  She could perform pushing and pulling with her upper and lower extremities within the aforementioned weight restrictions.  However, with her left upper extremity, pushing and pulling only occasionally. The claimant could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching except only occasional fine manipulation with her left upper extremity.  Her left hand is her non-dominant hand.  She should avoid unprotected heights, moving machinery, and vibrations. She was restricted to a relatively clean work environment, meaning low levels of pollutants and stable temperatures.  She could perform the postural activities occasionally of climbing ramps and stairs, balancing, stooping, crouching, kneeling, and crawling.  She could not climb ladders, ropes, or scaffolds.  She should not have been required to perform more than simple reading as part of the job; basic forms are acceptable but not reading paragraphs.  She could perform basic math skills, such as addition and subtraction.  She should not have been required to constantly turn her head. Finally, she needed ready access to the bathroom facilities (Tr. 19-20).

Adopting the VE's job findings, the ALJ found that Plaintiff could perform the work of a machine tender, counter clerk, and line attendant (Tr. 24).

The ALJ noted that allegations of disability beginning between July 1, 2008 and September 30, 2008 stood at odds with Plaintiff's admission that she began a job caring for an elderly couple in November, 2008 (Tr. 21). The ALJ cited treating records from the relevant period stating that Plaintiff received conservative treatment for back problems and achieved good results from antidepressives (Tr. 21). The ALJ discounted Dr. Holmes' April, 2011 assessment of Plaintiff's condition during the relevant period on the basis that (1) it claimed to address conditions occurring two-and-a-half years before the assessment was written, (2) his treating notes from that period did not support a disability finding (3) Plaintiff was able to work in November, 2008 (Tr. 22). For the same reasons, the ALJ assigned "little weight" to the opinion of Plaintiff's husband (Tr. 22).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Obesity

Plaintiff argues first that ALJ failed to consider the effects of obesity in crafting the RFC. *Plaintiff's Brief* at 4-6, *Docket #15* (citing SSR 02-1p). In response, Defendant concedes that the word "obesity" is absent from the administrative opinion, but that the ALJ's citation to medical records containing mention of the condition is sufficient acknowledgment to meet the requirements of SSR 02-1p. *Defendant's Brief* at 6, *Docket #20* (citing *Bledsoe v. Barnhart,* 165 Fed.Appx. 408, 411-412, 2006 WL 229795, *3-4 (6th Cir. January 31, 2006)).

Obesity, by itself, does not constitute a disability. SSR 02–1p. Nonetheless, the condition must be considered in combination with other impairments in determining whether the claimant is disabled. *Id.* The administrative findings need not contain an explicit reference to the claimant's obesity if the decision as a whole appears to have adopted limitations resulting from the condition. *Coldiron v. Commissioner Of Social Security,* 391 Fed.Appx 435, 2010 WL 3199693, *7 (6th Cir. August 12, 2010) (citing *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir.2004)). "[SSR 02-1p] states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Bledsoe, supra,* at *3. "It is a mischaracterization to suggest that Social Security Ruling 02–01p offers any particular procedural mode of analysis for obese disability claimants." *Id.*

As noted by Plaintiff, the medical records for the relevant period state that Plaintiff's BMI ranged between 34.04 to 35.10, well above the number required for a diagnosis of

obesity[4] (Tr. 352-371). Further, while the application for benefits did not allege limitations as a result of obesity, these records were "sufficient to alert the ALJ to the impairment." *Skarbek* 390 F.3d at 504. Nonetheless, the ALJ's omission of the term "obesity" from the administrative opinion does not constitute error. Plaintiff notes that "the effects of obesity can be subtle, including 'loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea.'" *Plaintiff's Brief* at 5 (citing SSR 02-1p). However, the ALJ, included sleep apnea among the severe impairments at Step Two (Tr. 17), citing Dr. Obeid's September, 2008 diagnosis of sleep apnea resulting from obesity (Tr. 365, 488). Because the ALJ acknowledged limitations as a result of the obesity-induced condition of sleep apnea, the argument that she did not consider Plaintiff's obesity is unavailing.

While Plaintiff also argues that SSR 02-1p requires consideration of the effects of obesity on the respiratory and musculoskeletal systems, the treating records for this period do not provide any support for the conclusion that obesity affected her respiratory or musculoskeletal to an extent greater than reflected by the RFC. These records, although stating Plaintiff was obese, nonetheless support the finding that she was capable of exertionally light work. Plaintiff reported in April, 2008 that back pain did not prevent her from walking two miles each day (Tr. 375). She stated that through the relevant period, she acted as her elderly father-in-law's primary care giver (Tr. 317, 371). She reported in

---

[4] "Obesity is diagnosed when an individual's body mass index ("BMI") is 30 or higher." http://www.mayoclinic.com/health/obesity/DS00314/DSECTION=symptoms. (last visited February 21, 2013).

September, 2008 that her back pain was intermittent at most, noting "some back pain at times between shoulder blades when active with vacuuming or chores" (Tr. 367). While Dr. Holmes stated in April, 2011 that Plaintiff became fatigued and short of breath during a stress test, her inability to complete the stress test, by itself, does not stand at odds with the finding that she was capable of exertionally light work (Tr. 702). The fact that the stress test was negative for abnormalities also undermines the argument that obesity created respiratory or exertional limitations for this period (Tr. 393). Because the ALJ acknowledged the obesity-induced condition of sleep apnea at Step Two and the record does not show that obesity created greater limitations than those found in the RFC, this argument does not provide grounds for remand.

### B. SSR 96-8p

Plaintiff argues that the ALJ did not explain the evidentiary basis for the RFC. *Plaintiff's Brief* at 6-9 (citing SSR 96-8p). She notes that SSR 96-8p requires a "function by function" evaluation of her work-related activities by the ALJ. *Id.* Plaintiff also argues in passing that the ALJ erred by discounting her allegations of limitation for the relevant period. *Plaintiff's Brief* at 7-8. Finally, she contends that the evidence supports an RFC for sedentary, rather than light work, noting that a finding that Plaintiff (52 at the date last insured) was limited to unskilled, sedentary work would direct a disability finding. *Id.* at 8-9.

SSR 96-8p requires that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§

404.1545 and 416.945." The question of whether the ALJ performed a sufficient analysis of the Plaintiff's physical limitations is governed by § 404.1545 which pertains to "sitting, standing, walking, lifting, carrying, pushing, [and] pulling" as well as "manipulative or postural functions, such as reaching, handling, stooping or crouching." *Id.*

This argument is unavailing. First, in determining that Plaintiff could perform exertionally light work, the ALJ acknowledged July, 2008 imaging studies showing degenerative changes and spurring, but noted that the month before, Plaintiff denied radiating pain (Tr. 20-21). The ALJ observed that despite allegations of disability, none of the treating sources imposed limitations on Plaintiff's physical activities during the relevant time period (Tr. 22). The finding that Plaintiff could perform exertionally light work does not overstate Plaintiff's exertional abilities as reflected by the treating records.

Further, the ALJ supported the postural, manipulative, and environment limitations found in the RFC, by stating that she "gave some credit to" the diagnosis of restless leg syndrome, allegations of left thumb pain, urinary frequency, and learning difficulties in crafting the RFC (Tr. 22). However, she permissibly rejected Plaintiff's claims of greater limitations for this period, noting elsewhere that Plaintiff's allegations of disability were defeated in large part by her ability to take a job caring for an elderly couple in November, 2008 (Tr. 344).

If anything, the ALJ accepted a number of allegations unsupported by the treating records. The RFC includes sit/stand at will option, despite the fact that Plaintiff's alleged inability to stand in one place for more than 15 minutes during the relevant period is not

established by contemporaneous treating observations (Tr. 19). While the medical evidence does not show the presence of any manipulative limitations prior to Plaintiff's January, 2009 accident, the RFC included limitations on the use of the upper left extremity (Tr. 19). The ALJ also limited Plaintiff to the occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling (Tr. 19). She also precluded the climbing of ropes, ladders, and scaffolds although the record contained little support for these restrictions during the relevant period (Tr. 19).

While Plaintiff also faults the ALJ for discounting Dr. Holmes' April, 2011 assessment, the ALJ accurately noted that Dr. Holmes' assessment contradicted his own records from the same period (Tr. 22). In rejecting the disability opinion, the ALJ cited treating records showing that Plaintiff denied back pain on several occasions between July 1, and September 30, 2008 (Tr. 22). She also discounted Dr. Holmes' assessment on the basis that Plaintiff was capable of starting a new job in November, 2008.[5] The ALJ likewise discounted the testimony of Plaintiff's husband on the basis that it contradicted medical records for that period (Tr. 22). While Plaintiff's argues that her husband's testimony that she required daily naps ought to have been credited, the treating records contain no support for this claim. Finally, Plaintiff's September, 2008 admission that she was able to vacuum, perform other household chores, and exercise despite intermittent back pain, also supports the conclusion that she could perform exertionally light activities during the relevant period

---

[5] Plaintiff worked as a care giver to an elderly couple, which would presumably require more than sedentary activity.

(Tr. 363). While Plaintiff is correct that a finding that she was capable of only sedentary work would direct a disability determination, the record easily supports the finding that she could perform exertionally light work for the period in question.[6]

In closing, it should be noted that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's current health problems. However, based on a review of this record, the ALJ's decision that Plaintiff was not disabled between July 1, and September 30, 2008 is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## **CONCLUSION**

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #20] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #15] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

---

[6] "Under the Social Security Administration's regulations, a person (1) who is 'closely approaching advanced age' (that is, a person between the ages of fifty and fifty-four, *see* 20 C.F.R. § 404.1563(d)), (2) who has a high school education that does not provide for direct entry into skilled work, and (3) whose previous work experience was skilled or semiskilled work that is not transferable to other jobs in the national economy, is generally considered disabled...if her impairments limit her 'maximum sustained work capability' to sedentary work." *Rogers v. Commissioner of Social Security,* 2000 WL 799332, *1 (6th Cir. June 9, 2000). "Such a claimant is not considered disabled if she can do light or medium work. *Id.*; 20 C.F.R. Part 404, Subpart P, App. 2, Tables 1-3 (Rule 201.14).

72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  February 22, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 22, 2013.

s/Johnetta M. Curry-Williams
Case Manager